# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ATTORNEYS LIABILITY PROTECTION SOCIETY, INC., a Risk Retention Group,<br><br>             Plaintiff,<br><br>             v.<br><br>INGALDSON FITZGERALD, P.C., f/k/a Ingaldson, Maassen & Fitzgerald, P.C.,<br><br>             Defendant. | Case No. 3:11-cv-00187-SLG |

## ORDER RE MOTION TO AMEND

Before the Court at Docket 92 is Defendant Ingaldson Fitzgerald's ("IMF") Motion to Allow Amendment and Counterclaims Against ALPS. Plaintiff Attorneys Liability Protection Society ("ALPS") opposed the motion at Docket 96, to which IMF replied at Docket 103. Oral argument was not requested and was not necessary to the Court's decision.

## INTRODUCTION

IMF seeks to amend its answer to assert additional defenses and counterclaims for misrepresentation, fraud, deceit, and estoppel against ALPS for allegedly misrepresenting that it hired IMF's independent counsel, Matthew Peterson, pursuant to the Alaska Independent Counsel statute, AS 21.96.100(d).[1] ALPS opposes the motion on several grounds; it maintains that the Ninth Circuit's decision forecloses the

---

[1] *See* Docket 93-1 (Proposed Am. Answer) at 13–19. Alaska Statute 21.89.100, as referenced by IMF, was renumbered to AS 21.96.100 in 2010.

counterclaims, that IMF cannot demonstrate good cause as required by Federal Rule of Civil Procedure 16, and that the motion is untimely, prejudicial, and futile.[2]

## BACKGROUND

From April 29, 2007 to April 29, 2008, IMF was covered by an attorneys' liability policy issued by ALPS ("Policy").[3]

On October 22, 2008, an adversary proceeding for recovery of a retainer fee was initiated against IMF in the U.S. Bankruptcy Court for the District of Alaska.[4] IMF notified ALPS of the suit, and ALPS accepted IMF's tender of the defense but reserved "all rights," including the right to reimbursement of costs expended defending uncovered claims.[5] IMF then retained independent counsel, Mr. Peterson, whom ALPS has paid in full.

In 2011, after the bankruptcy court entered summary judgment against IMF, ALPS filed this suit against IMF seeking declarations that the Policy did not cover the underlying claims and that it was not obliged to furnish an appeal bond. It also sought a monetary award reimbursing it for the cost of defending IMF in the bankruptcy court.[6] IMF's Answer to Complaint included a broadly worded defense that ALPS's prayer for relief violates AS 21.96.100 and ALPS's duty of good faith and fair dealing to IMF.[7]

In an order issued on December 21, 2012, this Court held ALPS was not entitled

---

[2] *See* Docket 96 (ALPS's Opp'n).

[3] Docket 1 (Compl.) at ¶ 37; Docket 17 (Answer) at ¶ 37.

[4] Docket 1 at ¶ 45; Docket 17 at ¶ 45.

[5] Docket 1 at ¶ 46; Docket 17 at ¶ 46; Docket 30-1 (Letter).

[6] Docket 1 at 13.

[7] Docket 17 at 9, ¶ 9.

3:11-cv-00187-SLG, *ALPS v. IMF*
Order re Motion to Amend
Page 2 of 12

to reimbursement of the expenses it had incurred defending IMF because the reimbursement provision of the Policy did not comply with AS 21.96.100(d).[8] And on January 24, 2013, this Court held that the Policy did not cover the underlying claims that ALPS had paid to defend IMF and ALPS was not obligated to provide an appeal bond.[9]

Both sides appealed. The Ninth Circuit then certified two questions to the Alaska Supreme Court that can be summarized as follows: (1) does Alaska law prohibit enforcement of a policy provision entitling an insurer to reimbursement of fees and costs incurred by the insurer defending claims under a reservation of rights under certain specified conditions; and, if so, (2) is enforcement of a provision entitling an insurer to reimbursement still prohibited if the duty to defend never arose under the policy because there was no possibility of coverage?

The Alaska Supreme Court answered "yes" to both certified questions, holding that "[a] review of [AS 21.96.100(d)'s] text indicates that reimbursement is prohibited," and prohibited regardless of whether the duty to defend arose.[10] However, the Ninth Circuit held that AS 21.96.100(d)'s prohibition on reimbursement of fees and costs incurred by an insurer defending a non-covered claim was preempted by the Liability Risk Retention Act of 1986, 15 U.S.C. §§ 3901-3906.[11] The Ninth Circuit also held that "ALPS did not breach the implied covenant of good faith and fair dealing." IMF had argued that by failing

---

[8] *See* Docket 61 (December 2012 Order) at 13.

[9] Docket 63 (January 2013 Order).

[10] *Attorneys Liab. Prot. Soc'y, Inc. v. Ingaldson Fitzgerald, P.C.*, 370 P.3d 1101 (Alaska 2016).

[11] *Attorneys Liab. Prot. Soc'y, Inc. v. Ingaldson Fitzgerald, P.C.*, 838 F.3d 976 (9th Cir. 2016).

3:11-cv-00187-SLG, *ALPS v. IMF*
Order re Motion to Amend
Page 3 of 12

to attend settlement conferences, ALPS had acted in bad faith and therefore should be estopped from denying coverage. But the Ninth Circuit held that "ALPS informed [IMF] from the outset that it intended to assert coverage defenses, provided independent counsel to [IMF], and acted consistently with its view that coverage did not exist."[12] The Ninth Circuit reversed that portion of the decision that precluded ALPS from recovering fees and affirmed "the district court's holding that the claims in the underlying dispute were not covered under the policy." The Circuit Court then remanded the case "for further proceedings consistent with [its] opinion."[13]

Now on remand, IMF seeks to amend its answer and add counterclaims.[14]

## DISCUSSION

**1. Jurisdiction**

This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Under diversity jurisdiction, the Court applies federal procedural law and Alaska substantive law.

**2. Law of the Case**

When a case is remanded, the trial court may not deviate from the mandate of the appellate court. This principle, the so-called mandate rule, precludes a trial court from reconsidering issues "decided explicitly or by necessary implication" on appeal.[15] "When

---

[12] *Id.* at 982 (distinguishing *Sauer v. Home Indem. Co.*, 841 P.2d 176, 182 (Alaska 1992)).

[13] *Id.* at 982–83.

[14] *See* Docket 92 (Mot. to Am.); Docket 93 (Mem.).

[15] *Liberty Mutual Insurance Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982).

3:11-cv-00187-SLG, *ALPS v. IMF*
Order re Motion to Amend
Page 4 of 12

acting under an appellate court's mandate, an inferior court 'cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided upon appeal; or intermeddle with it, further than to settle so much as has been remanded.'"[16]

IMF maintains that the Ninth Circuit did not address whether IMF's affirmative defenses apply, whether "ALPS is entitled to recover attorney's fees," or whether ALPS misrepresented the applicable law to IMF; rather, according to IMF, nothing in the Ninth Circuit opinion "directed this Court to enter summary judgment in ALPS' favor."[17]

ALPS disagrees, asserting that the Ninth Circuit opinion left "no discretion for this Court to entertain new counterclaims."[18] In support, ALPS cites *Matter of Beverly Hills Bancorp*.[19] In *Beverly Hills Bancorp*, the Ninth Circuit remanded "for the purpose of determining the proper interpretation of 'interest earned,'" a term used in a contested settlement agreement.[20] Bancorp's Trustee then petitioned the Ninth Circuit for rehearing or clarification to direct the bankruptcy court to allow the Trustee to amend his pleadings on remand. The Ninth Circuit denied the Trustee's petition. Nonetheless, on remand the Trustee requested permission to amend its pleadings, which the bankruptcy court granted, and which resulted in a five-week trial. On renewed appeal, the Ninth Circuit

---

[16] *Matter of Beverly Hills Bancorp*, 752 F.2d 1334, 1337 (9th Cir. 1984) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)).

[17] Docket 103 (IMF Reply) at 9–10.

[18] Docket 96 (ALPS's Opp'n) at 4.

[19] 752 F.2d 1334 (9th Cir. 1984).

[20] *Id.* at 1136.

3:11-cv-00187-SLG, *ALPS v. IMF*
Order re Motion to Amend
Page 5 of 12

held that the bankruptcy court erred in permitting the Trustee to amend on remand, because that action was inconsistent with the Ninth Circuit's original mandate, as it had previously denied the Trustee's request to direct the bankruptcy court to allow amendment. The original mandate made clear that the only issue remaining on remand was how to interpret "interest earned." This "[b]y necessary implication, [] foreclosed a trial on an entirely new theory of recovery."[21] Moreover, the Ninth Circuit held that Federal Rule of Civil Procedure 15's directive, that amendments be freely granted, should not be extended if amendment is requested "after a claim had been fully litigated on the merits through appeal."[22]

However, two years later, the Ninth Circuit in *Nguyen v. United States* held that "absent a mandate explicitly or impliedly precluding amendment, the decision whether to allow leave to amend is within the trial court's discretion."[23] In *Nguyen*, the district court granted partial summary judgment for plaintiffs Bertrand and Nguyen and denied the government's motions for summary judgment. On appeal, the Ninth Circuit reversed and remanded. In *Bertrand*, the Ninth Circuit directed the trial court to enter "summary judgment in favor of the government." In *Nguyen*, the Ninth Circuit remanded for "further consideration" and explicitly permitted "other challenges to the agency action" to be "presented to the district court on remand."[24] On remand, the district court granted both

---

[21] *Id.* at 1337–38.

[22] *Id.* at 1338.

[23] 792 F.2d 1500, 1502 (9th Cir. 1986).

[24] *Id.* at 1501.

3:11-cv-00187-SLG, *ALPS v. IMF*
Order re Motion to Amend
Page 6 of 12

Bertrand and Nguyen leave to amend their complaints and later granted summary judgment against the government in both cases. On renewed appeal, the Ninth Circuit held that the decision whether to allow leave to amend was within the district court's discretion in both cases, because its prior mandates did not expressly or impliedly preclude amendment. But the Ninth Circuit held that the district court had erred in *Bertrand* by failing to follow the mandate that directed the entry of summary judgment for the government. The Circuit Court also observed that the entry of summary judgment may have affected the trial court's decision to grant leave to amend, as trial courts are "ordinarily reluctant to allow leave to amend to a party against whom summary judgment has been entered."[25]

The Court reconciles these cases by noting that in *Beverly Hills Bancorp*, the Ninth Circuit, by denying the Trustee's petition regarding amendment, implicitly precluded amendment. Also, the mandate in *Beverly Hills Bancorp* was precise and restricted in its directive to the trial court. In contrast, in *Nguyen* the mandate did not impliedly preclude amendment, and in Nguyen's particular case, expressly authorized it.

In this case, there is no indication from the Ninth Circuit mandate or any other appellate order that it would not permit amendment. Moreover, rather than remand for the entry of judgment or the resolution of a discrete issue, the Ninth Circuit remanded "for

---

[25] *Id.* at 1503 (quoting C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2712 (2d ed. 1983)). The Ninth Circuit noted, "Much of the value of summary judgment procedure in the cases for which it is appropriate . . . would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory." *Id.* (quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469–70 (5th Cir. 1967)).

3:11-cv-00187-SLG, *ALPS v. IMF*
Order re Motion to Amend
Page 7 of 12

further proceedings consistent with [its] opinion."[26] And, unlike the Trustee in *Beverly Hills Bancorp*, IMF raised the claims it now seeks to add in a motion to strike it filed in 2012.[27] Based on the foregoing, the Court finds that the Ninth Circuit mandate does not preclude this Court from permitting IMF to amend its answer and add counterclaims.

**3. Request to Amend the Scheduling Order**

In its proposed amended answer, IMF seeks to add a new theory of bad faith based on the allegation that ALPS misrepresented to IMF that AS 21.96.100 would apply to ALPS's hiring of independent counsel.[28] IMF brings its motion for leave to amend under Rule 15, which provides that "[t]he court should freely give leave when justice so requires." But when a motion to amend is made after the deadline for amendment specified in a Rule 16(b) scheduling order, the party seeking amendment must show good cause to modify the expired deadline in the scheduling order.[29] Here, the Court entered a Scheduling and Planning Order on February 22, 2012 that required all motions to amend to "be served and filed not later than the times specified by Local Rule 16.1(c)(6)."[30] District of Alaska Local (Civil) Rule 16.1(c)(6) provides that any motion to amend

---

[26] *Attorneys Liab. Prot. Soc'y*, 838 F.3d at 982–83.

[27] *See* Docket 54. IMF's motion to strike was "denied as moot" in the Court's December 2012 Order. *See* Docket 61 (December 2012 Order) at 13.

[28] Docket 93-1 at 13–19.

[29] *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006). Rule 16(e) provides that a court may only modify a scheduling order after a pretrial conference to prevent "manifest injustice." Here, there was no pretrial conference because the Court entered summary judgment.

[30] Docket 23 (Scheduling Order).

3:11-cv-00187-SLG, *ALPS v. IMF*
Order re Motion to Amend
Page 8 of 12

pleadings must be filed not later than 60 days of the date the scheduling order is entered. The parties thus had until April 22, 2012 to file any motions to amend the pleadings pursuant to Rule 15. IMF's motion to amend, filed on December 7, 2016, misses this deadline by over four years.

To amend the Scheduling Order so as to permit an amended pleading at this time, IMF must show "good cause." "Unlike Rule 15(a)'s liberal amendment policy . . . Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment."[31] Good cause exists when "scheduling deadlines cannot be met despite [a] party's diligence."[32] "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."[33] The party seeking amendment should first move to amend the scheduling order, and should not rely solely on a motion for leave to amend its pleading.[34]

Here, IMF has not moved to amend the Scheduling Order. However, it addressed Rule 16's good cause requirement in its reply, after ALPS raised the issue in its

---

[31] *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992) (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)).

[32] *Id.* (citing 6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1522.1 at 231 (2d ed. 1990)).

[33] *Id.* (citing *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).

[34] *Id.* at 608 (suggesting that parties must move to amend the scheduling order); *Jauregui v. City of Glendale,* 852 F.2d 1128, 1133–34 (9th Cir.1988) (party bound by facts stipulated to in pretrial order when party failed to seek a modification of order from the district court); *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff,* 768 F.2d 1099, 1104 (9th Cir.1985), *superseded by statute on other grounds as recognized in MHC Fin. Ltd P'ship v. City of San Rafael*, 714 F.3d 1118, 1125 (9th Cir. 2013) (court may deny as untimely a motion to amend filed after the scheduling order cut-off date when no motion to modify the scheduling order was made).

3:11-cv-00187-SLG, *ALPS v. IMF*
Order re Motion to Amend
Page 9 of 12

opposition.[35] IMF argues that good cause exists to allow it to amend its pleading now because "ALPS didn't tell anyone it thought Montana law applied until well after discovery closed."[36] IMF also asserts that in late 2012, after learning of ALPS's new position it "moved to strike ALPS' new argument" and "immediately asked for the ability to explore the fraudulent effect of this newly disclosed issue" but this Court "denied the motion to strike or allow discovery on the issue of fraud as moot on January 24, 2013."[37]

From the Court's review of the record, ALPS first raised the issue of federal preemption in its opposition and cross motion on summary judgment, filed on June 11, 2012.[38] And at the oral argument on August 10, 2012, ALPS made its position on the issue clear:

> The Court: So is it your position that the statute that the defendants have cited to in Alaska law does not apply?
>
> Mr. Lynch: Yes, Your Honor.
>
> The Court: Okay.
>
> Mr. Lynch: Federal preemption. We are subject only to the laws of the State of Montana . . . And if the federal statute applies . . . the [Alaska] statute for the appointment of independent counsel does not apply.[39]

---

[35] Docket 96 (ALPS's Opp'n to Mot. to Am.); Docket 103 (IMF's Reply).

[36] Docket 103 at 11.

[37] *See* Docket 103 at 5–7.

[38] *See* Docket 35 (ALPS's Opp'n) at 16–17 (ALPS asserted: "With certain limited exceptions, the oversight of Risk Retention Groups has been preempted by the Federal Government . . . . Therefore, contrary to IMF's proffered misconstruction of the Policy and AS 21.96.100 as 'conflicting,' subsection 100(d) does not speak to, limit, or otherwise preclude ALPS's contractual (and common law) right to seek reimbursement of defense costs attributable to noncovered claims."). *Cf.* Docket 103 at 4 (IMF's Reply) ("ALPS did not argue that the LRRA preempted AS [21.96.100]" in its opposition and cross motion).

[39] Docket 65 (Oral Arg. Tr.) at 13, 15.

3:11-cv-00187-SLG, *ALPS v. IMF*
Order re Motion to Amend
Page 10 of 12

IMF was thus on notice of ALPS's position regarding federal preemption as early as June 11, 2012, months before the close of discovery; and ALPS's position was further emphasized at the August 2012 oral argument.[40] But it was not until October 31, 2012, in response to ALPS's supplemental briefing on the issue of federal preemption, that IMF requested that the Court re-open discovery to allow IMF to investigate potential claims of fraud on this basis.[41] IMF did not act with all due diligence to raise this issue in 2012.

Additionally, the prejudice to ALPS in permitting IMF to amend its answer and add counterclaims at this point is considerable. This case was originally an insurance coverage dispute that focused on the application and interpretation of an Alaskan statute. Discovery was minimal, and the case was unlikely to go to trial as its resolution depended primarily on a discrete legal question. To add IMF's proposed counterclaims for fraud and misrepresentation would require the Court to reopen discovery, which has been closed for nearly five years. The discovery process could likely be lengthy and fact intensive. It may require IMF attorneys to depose ALPS officers, whose nine-year-old conduct and conversations would be scrutinized for evidence of fraud.[42] If evidence of fraud were detected, the case could proceed to trial, further delaying the resolution of this extensively litigated action by many more months, if not years. Accordingly, the Court

---

[40] Factual discovery closed on August 10, 2012 and expert discovery closed on November 5, 2012. See Docket 23 (Scheduling Order) at 4.

[41] Moreover, IMF had pleaded breach of the duty of good faith and fair dealing as affirmative defenses in its original answer.[41] IMF could have sought discovery on these claims prior to the close of discovery in August 2012 based on ALPS's statements in its June filing and at the August oral argument.

[42] See, e.g., Docket 93-1 at 21 (Proposed Am. Answer) (2008 letter informing IMF that ALPS had retained independent counsel pursuant to AS [21.96.100(d)]).

3:11-cv-00187-SLG, ALPS v. IMF
Order re Motion to Amend
Page 11 of 12

finds that permitting IMF to amend the scheduling order would greatly prejudice ALPS. Under these circumstances, IMF's motion to allow amendment should not be granted.[43]

## CONCLUSION

In light of the forgoing, IMF's Motion to Allow Amendment and Counterclaims Against ALPS at Docket 92 is DENIED.

The Court is inclined to grant ALPS's motion to enter judgment in favor of ALPS;[44] however, the Court will grant IMF an opportunity to address the merits of ALPS's proposed award of $205,256.08 in defense costs.[45] IMF may file a supplemental response to ALPS's motion to enter judgment within 14 days of this order. ALPS may file a supplemental reply within 7 days thereafter.

DATED this 26th day of June, 2017.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[43] The Court is also of the view that IMF's proposed affirmative defenses and counterclaims may well be futile, as the proposed answer fails to set out sufficient facts to support those claims. *See* Docket 93-1 (Proposed Am. Answer). Specifically, there is no indication that ALPS knew its representations regarding the applicability of AS 21.96.100 were false when made, as is required under Alaska law. *See Bubbel v. Wien Air Alaska, Inc.*, 682 P.2d 374 (Alaska 1984). Nor does IMF allege facts establishing that ALPS's interpretation of the Alaska statute was objectively unreasonable. *See Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1325 (Alaska 1993) ("[W]here the insurer establishes that no reasonable jury could regard its conduct as unreasonable, the question of bad faith need not and should not be submitted to the jury."). In fact, the evidence indicates just the opposite. ALPS repeatedly maintained that AS 21.96.100 applied but should be interpreted to permit reimbursement, *see* Docket 35 at 17–18, and the Ninth Circuit's certification of the two questions to the Alaska Supreme Court demonstrates that the interpretation of that statute was unsettled. *See also* Couch on Insurance 3rd § 226:123.

[44] Docket 102 (Mot. for Entry of Final J.).

[45] *See* Docket 105 (Opp'n to Mot. for Entry of Final J.) at 4.

3:11-cv-00187-SLG, *ALPS v. IMF*
Order re Motion to Amend
Page 12 of 12